1
2
3
4                        UNITED STATES  DISTRICT COURT
5                          Northern District of California
6
7   DELORES STRINGER, *et al.*,
8                      Plaintiffs,                    No. C 07-03544 MEJ
9        v.                                     **ORDER RE PARTIES' MOTIONS IN**
    CITY OF SAN PABLO, *et al.*,                **LIMINE AND MOTIONS TO**
10                                              **BIFURCATE TRIAL**
                         Defendants.
11  _____/
12
13          Pending before the Court are: (1) Defendants City of San Pablo, Joseph Aita, Frank Perino
14  ("Officer Perino"), and Mark Galios's ("Officer Galio") Motions in Limine Nos. 1, 2, and 3 (Dkts.
15  ##45, 46, 47); (2) Defendants' Motion to Bifurcate Trial (Dkt. #48); (3) Plaintiffs' Motions in
16  Limine (Dkt. #51); and (4) Plaintiffs' Motion to Bifurcate Trial (Dkt. #50).  The Court has
17  thoroughly reviewed the parties' respective Motions, as well as their opposition briefs.  On
18  December 3, 2009, the Court held a pre-trial conference in this matter, at which time the Court heard
19  oral argument from the parties on their respective Motions.  After consideration of the parties'
20  written materials, oral argument, and controlling legal authorities, the Court now **ORDERS** as
21  follows.
22  **A.      Defendants' Motions in Limine**
23          1.     Motion in Limine No. 1 (Dkt. #45)
24          Defendants request that the Court exclude any evidence of personnel issues involving
25  Officers Perino and Galios regarding "other unrelated matters, including citizen complaints, internal
26  investigations and/or potential disciplinary issues, if any such issues exist."  (Dkt. #45 at 1-2.)
27  Defendants explain that "[t]he term 'other' refers to any matters that do not involve decedent Melvin
28  Hardnett ["Decedent"] and Plaintiffs' allegations against Officers Perino and Galios in the instant

shooting case." (*Id.* at 2.) They contend that such evidence is irrelevant under Federal Rule of Evidence 402, constitutes improper character evidence, and is unduly prejudicial and should be excluded pursuant to Rule 403.

In response Plaintiffs state that, assuming the Court bifurcates the liability phase of trial from the *Monell* phase, Plaintiffs do not intend to reference prior complaints from Defendants' personnel records in the liability phase of trial. However, Plaintiffs indicate that they "may seek to introduce other evidence, for purposes of [Federal Rule of Evidence] 404(b) evidence, proving a defendant officers' [sic] notice of certain issues, and training regarding various issues in this case." (Dkt. #52 at 2.) Plaintiffs also maintain that prior complaints against the Defendant Officers and prior acts are relevant in the *Monell* and punitive damages phases of trial. In particular, as discussed in greater detail below, Plaintiffs argue that they should be permitted to introduce evidence relating to the *Blakely* case, which involved Officer Perino.

Having considered the parties' arguments, the Court GRANTS Defendants' Motion to exclude any evidence of personnel issues involving Officers Perino and Galios concerning other matters unrelated to this case, including citizen complaints, internal investigations and/or potential disciplinary issues, as follows: Plaintiffs may not introduce such evidence during the liability phase of trial.

2.      Motion in Limine No. 2 (Dkt. #46)

In their Motion in Limine No. 2, Defendants request that the Court exclude any evidence of a prior incident involving Officer Perino and Keith Ramon Blakely. Defendants contend that evidence relating to that incident is irrelevant, amounts to inadmissible character evidence, and is unfairly prejudicial.

Plaintiffs oppose the Motion on the ground that the *Blakely* incident "is relevant to prove notice to Officer Perino as well as the common claim of a person trying to take a weapon from an officer[.]" (Dkt. #52 at 2.) Specifically, Plaintiffs advance that, "[t]o that end, Defendant Officer Perino's claim that Decedent Hardnett purportedly attempted to take Defendant Galios' firearm from its holster is made less likely because Defendant Officer Perino made the exact same claim only one

UNITED STATES DISTRICT COURT
For the Northern District of California

1  other time in his professional career as a police officer, which was the *Blakely* incident of May 22,

2  2006, one week before the subject-incident." (*Id*. at 3.)  Thus, Plaintiffs argue that the fact Officer

3  Perino made the claim that Decedent was attempting to grab Officer Galios' gun so close in time to

4  his claim that Blakely was trying to grab his gun in that prior incident, undermines the veracity of

5  Officer Perino's statement in this case.  (*Id*. at 5.)  Plaintiffs further argue that, "*Blakely* proves that

6  Officer Perino was aware that weapons retention systems on the firearm holster work effectively,

7  they keep a firearm secured in the event that a suspect attempts to take the firearm from the holster,

8  and makes other available uses of force short of lethal force against Decedent Melvin Hardnett, such

9  as the use of an impact weapon, reasonable, rendering the use of lethal force in shooting Decedent

10  unreasonable." (*Id*.)

11       The Court has carefully considered the parties' positions, and finds the arguments advanced

12  by Defendants in their Motion to be well-taken.  Accordingly, the Court **GRANTS** Defendants'

13  Motion in Limine No. 2 to exclude evidence of the *Blakely* incident.

14       3.    Motion in Limine No. 3 (Dkt. #47)

15       Defendants move to exclude any evidence, including testimony, from percipient witnesses

16  who were properly subpoenaed for deposition and failed to appear.  Specifically, Defendants

17  identify: (1) Quintasha Adigun; (2) Darlene Banks; (3) Lena Lee/Aleena McClinton; (4)

18  Deante/Deontai Pride; (5) Anna Ross; and (6) Eduardo Vasquez.  Defendants argue that they

19  subpoenaed each of the foregoing witnesses, but the witnesses did not appear for deposition.

20  Defendants further assert that Plaintiffs have disclosed Ms. McClinton as a percipient witness for

21  their case in chief.  Defendants object to Plaintiffs calling Ms. McClinton because they were not

22  provided an opportunity to depose her during discovery.

23       Plaintiffs respond that, should they be able to produce the individuals listed above,

24  particularly Ms. McClinton, for deposition prior to trial, Defendants will not be prejudiced and

25  Defendants' motion should therefore be denied.  Plaintiffs also argue that there is no indication that

26  Defendants have made follow-up attempts at serving or locating the witnesses.  Further, they argue

27  that Defendants have statements from several of the listed witnesses.

28

3

1    The Court has considered the parties' arguments and **RULES** as follows:  The Court

2  **GRANTS** Defendants' Motion.  However, if Plaintiffs are able to produce Ms. McClinton for

3  deposition prior to trial, Plaintiffs may file a motion with the Court requesting that she be allowed to

4  testify.

5  **B.**      **Plaintiffs' Motions in Limine (Dkt. #51)**

6        1.    Motion in Limine No.1

7        Citing Rules of Evidence 404 and 404(a), Plaintiffs move to exclude or limit evidence

8  relating to Plaintiffs' and Decedent's alleged criminal histories, including any prior instances of

9  alleged arrests, commission of crimes, video footage and/or still photographs of Decedent allegedly

10  engaged in assault or battery, or any similar conduct not part of the May 29th incident.  (Dkt. #51 at

11  2.)

12        Defendants, however, maintain that because the Officers' perception of what happened just

13  prior to the shooting is in dispute, evidence of Decedent's criminal history is relevant and

14  admissible.  Defendants rely on *Boyd v. City and County of San Francisco*, 576 F.3d 938, 944 (9th

15  Cir. 2009), in support of their argument.  The Court has reviewed *Boyd* and finds it inapposite to this

16  case.  Specifically, while the Ninth Circuit concluded that evidence regarding the decedent's

17  criminal history was properly admitted in that case, the Court indicated that it was in the context of a

18  suicide by cop defense, and the evidence made it more probable that the decedent was trying to

19  provoke a police shooting, rather than surrender.  *Id.* at 944-45.  Here, in contrast, Defendants are

20  not defending on a suicide by cop theory, and the Decedent's motivation or intention to provoke the

21  Officers to shoot him is not at issue.  Rather, the key issue is Decedent's *actions* leading up to the

22  shooting.  While Defendants may argue that Decedent's criminal history, including the fact that the

23  Decedent knew he would be facing his "third-strike" if arrested, makes it more probable that he was

24  acting erratically and violently resisting arrest, Defendants have not persuasively articulated how

25  Decedent's prior convictions lend support to the Officers' account of how Decedent acted when they

26  tried to detain him.  In contrast, in *Boyd*, the decedent's criminal history - and particularly, the

27  decedent's two attempted kidnappings that occurred on the evening he was shot - evinced the

28

UNITED STATES DISTRICT COURT
For the Northern District of California

4

UNITED STATES DISTRICT COURT
For the Northern District of California

1  decedent's intention of dying by police fire.  Here, however, there is no claim that Decedent's

2  intention was to die by struggling with the police.  Further, accepting Defendants' reading of *Boyd*

3  would mean that a defendant/suspect's criminal history would always be probative of the suspect's

4  resistance to arrest when there is a dispute on that issue.  The Court does not interpret *Boyd*'s ruling

5  so broadly; rather, it reads it as limited to cases where a suicide by cop theory is being asserted or

6  other similar circumstances where the suspect/defendant's intent is clearly at issue.

7       Further, under Rule 403, the Court must balance the probative value of Decedent's criminal

8  history against its prejudicial effect.  The Court agrees with Plaintiffs that any probative value the

9  evidence has is substantially outweighed by the potential that the jury would consider such evidence

10  beyond the purpose for which it would be admitted - even with a limiting instruction.

11       Taking these reasons together, the Court **RULES** as follows:  The Court **GRANTS**

12  Plaintiffs' Motion to exclude any evidence of Decedent's criminal history, including his statement to

13  Mr. Johnson and his involvement in and a riot in at Richmond High School and any conviction

14  resulting therefrom from the liability phase of trial.  Because the parties have not presented any

15  argument with respect to the Plaintiffs' criminal histories, the Court **DENIES** Plaintiffs' Motion as

16  to that request as moot.

17       2.    Motion in Limine No. 2

18       Pursuant to Federal Rules of Civil Procedure 26 and 37(c), Plaintiffs next move to exclude

19  any witnesses or evidence not disclosed or otherwise made known to Plaintiffs.  Defendants do not

20  oppose Plaintiffs' Motion, but correctly note that, Rule 26(a)(1)(A) does not require parties to

21  disclose witnesses or evidence used solely for impeachment.

22       The Court has considered the parties' positions, and there being no opposition, the Court

23  **GRANTS** Plaintiffs' Motion in Limine No. 2.

24       3.    Motion in Limine No. 3

25       In their third Motion in Limine, Plaintiffs move to exclude any reference to prior lawsuits or

26  judgment against Decedent or Plaintiffs.  (Dkt. #51 at 2.)  In particular, Plaintiffs contend that

27  Defendants have indicated that an outstanding civil judgment exists relating to Decedent's

28

conviction for beating a victim at Richmond High School in riots following the Rodney King verdict. Plaintiffs argue that such evidence has no role in the liability phase of the case, would be unfairly prejudicial under Rule of Evidence 403, and amounts to improper character evidence under Rule of Evidence 404(a).

Defendants, however, argue that Decedent's civil liability for his criminal acts make it more probable that Decedent was trying to violently resist his arrest, rather than surrender to police, and again cite *Boyd* in support. For the reasons set forth in the Court's ruling on Plaintiffs' Motion in Limine No. 1, the Court **GRANTS** Plaintiffs' Motion with respect to evidence relating to Decedent. Because Plaintiffs have not presented any discussion of evidence relating to the named Plaintiffs, the Court **DENIES** the Motion in that respect **without prejudice**.

        4.    <u>Motion in Limine No. 4</u>

Next, Plaintiffs move to exclude any reference to Decedent facing a "third strike." (Dkt. #51 at 3.) For the reasons set forth in the Court's ruling on Plaintiff's Motion in Limine No. 1, the Court **GRANTS** this Motion.

        5.    <u>Motion in Limine No. 5</u>

Plaintiffs next move to exclude any reference to or video footage from the post-Rodney King verdict riots at Richmond High School. In particular, Plaintiffs also move to exclude any video footage of Decedent involved in any other violent incident or altercation.

For the reasons set forth above with respect to Plaintiffs' Motion in Limine No. 1, the Court **GRANTS** Plaintiffs' Motion.

        6.    <u>Motion in Limine No. 6</u>

Next, Plaintiffs move to exclude evidence that a person identified as "Chocolate" was involved in drug-dealing around the time of Decedent's death. The Court questioned the parties about this issue during oral argument. Having considered the parties' arguments, the Court **GRANTS** Plaintiffs' Motion.

        7.    <u>Motion in Limine No. 7</u>

Plaintiffs next move to exclude expert testimony relating to "suicide by cop" theory because

6

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Defendants' experts have not mentioned "suicide by cop" in their reports.  Thus, Plaintiffs argue that

2    "Defendants cannot now offer expert testimony about 'suicide by cop' as being relevant[.]"  (Dkt.

3    #51 at 4.)  Defendants respond that they do not intend to offer expert opinion on a "strict 'suicide by

4    cop' theory."  (Dkt. #54 at 2.)  However, Defendants also assert that "this does not preclude them

5    from offering evidence about Decedent's criminal history, potential for a third strike and comments

6    to witness Willie Johnson that he would rather fight the cops than get arrested[] to explain

7    Decedent's erratic and violent behavior toward Officers Perino and Galios."  (Dkt. #54 at 2.)

8         Because Defendants have indicated that they are not presenting any expert evidence relating

9    to a suicide by cop theory, the Court **DENIES** Plaintiffs' Motion as moot.  As to the evidence

10   Defendants indicate they intend to offer, the Court has addressed its admissibility in other sections

11   of this Order.

12        8.     Motion in Limine No. 8

13        Plaintiffs next move to exclude any evidence that Decedent was under the influence of

14   cocaine and its effect upon Decedent.  Plaintiffs assert that Defendants did not know Decedent was

15   under the influence of cocaine, and therefore cannot rely upon such unknown information to justify

16   their use of force.  They further contend that cocaine did not kill Decedent.

17        Defendants, however, argue that evidence that Decedent had cocaine in his system is relevant

18   because it makes the Officers' account that Decedent was acting erratically and had a high energy

19   level, which exceeded the Officers' physical strength.  (Dkt. #55 at 5.)  The Court agrees.  Further,

20   the Court finds that the probative value of this evidence is not substantially outweighed by its

21   prejudicial effect.  Accordingly, the Court **DENIES** Plaintiffs' Motion to exclude evidence during

22   the liability phase of trial that Decedent was on cocaine at the time of the incident.

23        9.     Motion in Limine No. 9

24        Finally, Plaintiffs move to exclude the Rule 26 Report of Defendants' police practices expert,

25   Joe Callanan, and request an order prohibiting Mr. Callanan from: (1) referring to any evidence

26   excluded pursuant to Plaintiffs' Motions in Limine, including evidence of Decedent being on

27   cocaine at the time of the shooting; (2) referring to Plaintiffs' Complaint; or (3) referring to

28

7

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   Plaintiffs' settlement conference statements.

2        Defendants oppose the motion on several grounds. As to Plaintiffs' request that Mr.

3   Callanan be precluded from testifying about evidence excluded pursuant to the Motions in Limine,

4   the only pertinent issue that remains in light of the Court's other rulings concern evidence that

5   Decedent was on cocaine. The Court will therefore permit Mr. Callanan to refer to such evidence

6   during his testimony, subject to any other appropriate objections Plaintiffs may make at that time.

7   Mr. Callanan is precluded from referring to any other evidence excluded in this Order.

8        With respect to Plaintiffs' request that Mr. Callanan be precluded from citing, reading from,

9   or otherwise putting into evidence Plaintiffs' Complaint, Defendants maintain that, if Plaintiffs

10  dispute the accuracy of any statements in that pleading, they should have amended it. In the same

11  vein, Defendants point out that, even if the Complaint is unverified, Plaintiffs' counsel signed the

12  Complaint, thereby certifying under Rule 11(b) that, to the best of his knowledge that the claims are

13  warranted by existing law and the factual contentions have evidentiary support. Defendants contend

14  that they have been relying upon the facts and issues raised in the Complaint during the pendency of

15  this action, and that excluding any statements in the Complaint at this juncture would unfairly

16  prejudice Defendants.

17       The Court has considered the parties' arguments, and **DENIES** Plaintiffs' request to preclude

18  Defendants' expert from citing, reading from, or otherwise putting Plaintiffs' Complaint into

19  evidence without prejudice to Plaintiffs re-asserting such request if and when statements from the

20  Complaint are raised.

21       Finally, Plaintiffs request that the Court preclude Defendants' expert from referring to,

22  citing, or otherwise communicating any information in Plaintiffs' Settlement Conference Statement

23  to the jury. Defendants state that Mr. Callanan will not reference or cite from Plaintiffs' Settlement

24  Conference Statement at trial and avow that Mr. Callanan has not relied upon such statements for

25  any of his opinions. The Court finds Plaintiffs' grounds to be well-taken, and there being no

26  opposition, the Court **GRANTS** Plaintiffs' Motion in this respect.

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    **C.    Motions to Bifurcate Trial**

2        1.    Defendants' Motion to Bifurcate (Dkt. #48)

3        Pursuant to Federal Rule of Civil Procedure 42(b), Defendants request that the Court: (1)

4   bifurcate any *Monell*-related claims against the City of San Pablo and Chief Aita from claims against

5   Defendants Officer Perino and Officer Galios; and (2) bifurcate the punitive damages phase of trial.

6   Concurrently, Plaintiffs request that the Court bifurcate the trial between liability and damages

7   phases.  The Court will address each parties' request in turn.

8        As indicated above, Defendants request that the Court sever trial into three phases.  First,

9   Defendants propose that Plaintiffs' claims against Officers Perino and Galios be tried.  Next, if the

10  jury finds that the Officers committed a constitutional violation, then Plaintiffs' *Monell* claims

11  against the City and Chief Aita would be tried.  Finally, in the damages phase, Defendants request

12  that the Court bifurcate - or to be more precise, defer - admission of Defendants' financial evidence

13  until after the jury determines that punitive damages are warranted.  Plaintiffs do not oppose

14  Defendants' request for bifurcation of either the *Monell* claims or the punitive damages phase.  (Dkt.

15  #52.)

16       In support of its first request that trial of claims against the Defendant Officers be separated

17  from trial of the *Monell* claims, Defendants argue that to succeed on their *Monell* claims, Plaintiffs

18  must first establish an underlying constitutional violation of federal violation against the Defendant

19  Officers.  Thus, if the jury does not find such a violation, that finding would dispose of Plaintiffs'

20  municipal liability claims against the City and Chief Aida.  For this reason, Defendants also advance

21  that bifurcation of the *Monell* claims would ensure an expeditious trial and best promotes judicial

22  economy and resources. (*Id*. at 7.)  Additionally, Defendants assert that bifurcation of the *Monell*

23  claims is warranted because the allegations and issues underlying the Defendant Officers' liability,

24  which focus on the May 29, 2006 incident involving Decedent, are distinguishable from those

25  underlying Plaintiffs' *Monell* claims against the City and Chief Aita, which focus generally on the

26  City's policies and training.  (*Id*. at 5-6.)  Further, Defendants argue that bifurcation eliminates any

27  potential prejudice that may result from allowing the jury to hear evidence regarding the City's

28

9

1    policies and practices.  (*Id*. at 6-7.)

2         The Court has carefully considered Defendants' arguments in support of bifurcation and

3    finds them to be well-taken.  In particular, the Court agrees with Defendants that, because the

4    outcome of Plaintiffs' claims against the individual officers directly impacts the viability of their

5    *Monell* claims, bifurcation of the claims promotes judicial economy and minimizes any potential

6    prejudice to the parties.  Accordingly, the Court will **GRANT** Defendants' request to bifurcate

7    Plaintiffs' *Monell* claims and to try such claims after trial of Plaintiffs' claims against the Defendant

8    Officers.

9         The Court next turns to Defendants' request relating to any punitive damages phase of trial.

10   As previously detailed, Defendants request that the Court should defer admission of Defendants'

11   financial evidence until after the jury makes a finding regarding an award of punitive damages.

12   Defendants contend that delaying presentation of such evidence avoids undue prejudice to

13   Defendants by preventing the jury from considering Defendants' respective "wealth," when

14   considering whether punitive damages are appropriate.  Moreover, Defendants assert that structuring

15   the punitive damages phase of trial in this manner promotes judicial economy because until the jury

16   determines that punitive damages should be awarded, evidence regarding Defendants' finances is

17   unnecessary.  Plaintiffs do not oppose Defendants' request regarding the timing of presentation of

18   financial evidence.  The Court has carefully considered Defendants' request and agrees that

19   structuring the punitive damages phase as described above is prudent.  Accordingly, the Court will

20   **GRANT** Defendants' request to defer presentation of evidence regarding Defendants' finances until

21   after the jury returns a finding regarding punitive damages.

22        2.    Plaintiffs' Motion to Bifurcate (Dkt. #50)

23        Plaintiffs move to bifurcate the trial between liability and damages.  Plaintiffs argue that

24   evidence relating to Decedent's background, including his history of drug use, criminal history, civil

25   liability, involvement in a riot, and other prior bad acts are irrelevant in the liability stage of this case

26   and, even if relevant, are overwhelmingly prejudicial compared to their probative value.  (Dkt. #55

27   at 3.)  Defendants, however, oppose bifurcation of liability and damages.  Defendants maintain that

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

10

1   evidence of Decedent's drug use, prior bad acts and crimes, and civil liability, is of high probative

2   value for the determination of what Officers Perino and Galios were facing and what they perceived

3   just prior to the shooting of Decedent.

4       The Court has carefully considered the parties' arguments and weighed their competing

5   concerns, and agrees with Plaintiffs that bifurcation of liability and damages is appropriate.  The

6   Court therefore **GRANTS** Plaintiffs' Motion.

7       **IT IS SO ORDERED.**

8

9   Dated: December 28, 2009

10                                                     _____
                                                       Maria-Elena James
11                                                     Chief United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

11